UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Haji S.,[1]                                                    No. 18-cv-3493 (PAM/LIB)

               Petitioner,

    v.                                                     **REPORT AND**
                                     **RECOMMENDATION**

Matt Whitaker, Acting Attorney General, et al.,

               Respondent.

      This matter comes before the undersigned United States Magistrate Judge upon Petitioner Haji S.'s Petition for Writ of Habeas Corpus. [Docket No. 1]. The present case has been referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.

      For the reasons discussed herein, the Court recommends that Petitioner Haji S.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.

## I.      BACKGROUND AND STATEMENT OF FACTS

      On July 9, 2018, Petitioner Haji S.'s (hereinafter "Petitioner"), an individual in the custody of the Immigration and Customs Enforcement (ICE) currently housed at the Kandihohi County Jail in Willmar, Minnesota (hereinafter "Kandihohi Jail"), proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Petition [Docket No. 1]).

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration matters such as the present matter. Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

Petitioner is currently in removal proceedings before the U.S. Department of Homeland Security (DHS). (Id.). Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment. (Id. at 4).

Petitioner is a native and citizen of Somalia. (Petition, [Docket No. 1], at 1). He entered the United States as a refugee on August 22, 2001. (Id.). On October 4, 2005, Petitioner's status was adjusted to that of a lawful permanent resident. (Minner Decl., Ex. H, [Docket No. 8-8], at 1).

In December 2017, Petitioner was arrested and detained at the Hennepin County Jail for Aiding an Offender. (Minner Decl., Ex. F [Docket No. 8-6]). Thereafter, on December 18, 2017, ICE, in conjunction with Enforcement and Removal Operations (ERO) reviewed Petitioner's criminal record and immigration status and determined that removal proceedings should be initiated against him. (Id.).

On December 20, 2017, the Hennepin County Jail released Petitioner to ICE custody, and Petitioner was served with a Notice to Appear, charging removability under Section 237(a)(2)(A)(ii) of the Immigration and Nationality Act, due to Petitioner having multiple convictions for crimes involving moral turpitude. (Id.). On December 27, 2017, the Department of Homeland Security (DHS) commenced removal proceedings against Petitioner. (Id.).

On February 20, 2018, Petitioner filed an application for cancellation of removal, and on February 27, 2018, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). (Minner Decl., Ex. H, [Docket No. 8-8], at 1).

On January 17, 2019, the immigration judge (hereinafter "IJ") ordered Petitioner to be removed to Somalia and simultaneously denied Petitioner's applications for cancellation of

removal, asylum, withholding of removal, and protection under the Convention Against Torture. (Id. at 2).[2]

Petitioner thereafter filed his notice of appeal from the IJ's order of removal with the Board of Immigration Appeals (BIA).

## II.    PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241

Petitioner argues that his continued detention violates his due process rights under the Fifth Amendment. (Petition [Docket No. 1]). Petitioner is currently being held pursuant to 8 U.S.C. § 1226(c).

### A.  Standard of Review

The United States Supreme Court has explained that even individuals who attain the legal immigration status allowing them to be in the United States "do not have an absolute right to remain here." Jennings v. Rodriguez, 138 S. Ct. 830, 837 (2018). An individual initially admitted to the United States may be removed if it is later discovered that he was inadmissible at the time of entry into the United States. See, Id. Or, as in the case of Petitioner, an individual already admitted to the United States may be removed if he is convicted of certain criminal offenses after admission. Id. at 837–38; See, 8 U.S.C. § 1226. With respect to the detention of individuals falling into either of these two categories:

> [8 U.S.C. §] 1226(a) sets out the default rule:  The Attorney General may issue a warrant for the arrest and detention of an alien "pending a decision on whether the alien is to be removed from the United States." [8 U.S.C.] § 1226(a). "Except as provided in subsection (c) of this section," the Attorney General "may release" an alien detained under § 1226(a) "on bond . . . or conditional parole." [Id.]
>
> Section 1226(c), however, carves out a statutory category of aliens who may *not* be released under § 1226(a). Under § 1226(c), the "Attorney General shall take into custody any alien" who falls into one of several enumerated categories involving criminal offenses and terrorist activities. [8 U.S.C.] § 1226(c)(1). The

---

[2] Petitioner filed this Habeas Petitioner before the IJ issued his January 17, 2019, removal order.

> Attorney General may release aliens in those categories "only if the Attorney General decides . . . that release of the alien from custody is necessary" for witness-protection purposes, and "the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceedings." [8 U.S.C.] § 1226(c)(2).

Jennings, 138 S. Ct. at 837–38 (2018) (emphasis in original).

"'It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.' At the same time, however, [the United States Supreme Court] has recognized [a reasonable period of] detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore v. Kim, 538 U.S. 510, 523, 530 (2003) (citation omitted). Specifically, the "detention of deportable criminal aliens pending their removal proceedings . . . serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Id. at 527–28. Moreover, "detention under § 1226(c) has a 'definite termination point':  the conclusion of removal proceedings." Jennings, 138 S. Ct. at 846 (quoting Demore, 538 U.S. at 529).

A case recently before the United States Supreme Court involved arguments similar to those presently before this Court. In Jennings v. Rodriguez, the plaintiffs argued that § 1226(c) does "not authorize 'prolonged' detention in the absence of an individualized bond hearing at which the Government proves by clear and convincing evidence that the . . . detention remains justified." 138 S. Ct. at 839. The plaintiffs in Jennings argued that such prolonged detention without an individualized bond hearing violated the Due Process Clause of the Fifth Amendment. Id. The United States District Court for the Central District of California agreed, and it entered a permanent injunction ordering the Government to provide individual bond hearings. Id. On appeal, the Ninth Circuit Court of Appeals affirmed, but did so based upon its statutory construction of §

4

1226(c) "to include an implicit 6-month time limit on the length of mandatory detention." Id. at 846–48. In so construing § 1226(c), the Ninth Circuit relied heavily on the reasoning in Zadvydas v. Davis, 536 U.S. 678 (2001), in which the United States Supreme Court construed the statute that governs detention after an order of removal has been issued:

> [The statute] mean[s] that an alien who has been ordered removed may not be detained beyond "a period reasonably necessary to secure removal," and it further held that six months is a presumptively reasonable period. After that, the Court concluded, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must either rebut that showing or release the alien.

Jennings, 138 S. Ct. 843 (quoting Zadvydas, 533 U.S. at 699, 701). Citing Zadvydas, the Ninth Circuit in Jennings found a similar 6-month limitation on detention during removal proceedings under §§ 1226(b) and (c), and it held that, during removal proceedings, a detained individual "must be given a bond hearing every six months and that detention beyond the initial 6-month period is permitted only if the Government proves by clear and convincing evidence that further detention is justified." Jennings, 138 S. Ct. at 839.

The United States Supreme Court reversed, distinguishing the statutes governing detention after an order of removal has issued, as examined in Zadvydas, from those governing detention during removal proceedings. Id. at 843–44. The United States Supreme Court held that unlike the statutes at issue in Zadvydas, "§ 1226(c) does not on its face limit the length of the detention it authorizes" and instead, § 1226(c) "makes clear that the detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" Id. at 846 (emphasis in original). Therefore, the United States Supreme Court in Jennings held that "subject only to express exceptions, §§ 1225(b) and 1226(c) authorize detention until the end of applicable [removal] proceedings." Id. at 842. However, because the Ninth Circuit had not reached the petitioners' argument that prolonged detention under § 1226(c) without an individualized bond

hearing is unconstitutional, the United States Supreme Court remanded the case to the Ninth Circuit for consideration of those constitutional arguments on their merits. Id. at 851.

In a recent, informative decision from this District analyzing detention under § 1226(c), the Honorable Patrick J. Schiltz noted that various courts have utilized a fact-specific inquiry considering several factors as guidance for identifying when "continued detention becomes unreasonable and the Executive Branch's implementation of § 1226(c) becomes unconstitutional unless the Government has justified its actions at a hearing inquiring into whether continued detention is consistent with the law's purposes of preventing flight and dangers to the community." Muse v. Sessions, 2018 WL 4466052, at *3 (D. Minn. Sept. 18, 2018) (quoting Diop, 656 F.3d at 232). Among those factors are (1) the total length of detention to date, (2) the likely duration of future detention, (3) the conditions of detention, (4) delays of the removal proceedings caused by the detainee, (5) delays of the removal proceedings caused by the government, and (6) the likelihood that the removal proceedings will result in a final order of removal. Id. (citing Reid, 819 F.3d at 500–01); See also, Tao J. v. Sec'y of Dep't of Homeland Sec., No. 18-cv-1845 (NEB/HB), 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) (applying the same factors). In Muse, the Court found that four of these factors weighed in favor of the petitioner and thus granted the petitioner relief. 2018 WL 4466052, at *3.

**B. Analysis**

In the present case, application of the above factors supports Petitioner's argument that his prolonged continued detention in the instant case violates the Due Process Clause of the Fifth Amendment.

First, in examining the length of detention, the Eighth Circuit has yet to hold what constitutes a reasonable length of detention, however, while there is no bright-line rule, other

Circuits have weighed in on the issue.[3] Although not controlling, the Third Circuit recently characterized nine months as "straining any common-sense definition of a limited or brief civil detention." <u>Chavez-Alvarez v. Warden York Cty. Prison</u>, 783 F.3d 469, 477 (3d Cir. 2015). Similarly, the Sixth Circuit has articulated that "when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the community, that overbalances the alien's liberty interest." <u>Ly v. Hansen</u>, 351 F.3d 263, 273 (6th Cir. 2003).

Petitioner here has been detained under § 1226(c) for approximately seventeen months without a hearing on whether or not he is a danger to the community or likely to flee. Petitioner's detention is now longer than the reasonable amount of time contemplated in <u>Demore</u>, which mentioned a month and a half to five months as a reasonable period of time.[4] Thus, "continued detention without inquiry into its necessity becomes more and more suspect" as detention continues to extend past the time frame described in <u>Demore</u>. <u>See, gen.</u>, <u>Diop</u>, 656 F.3d at 234. Furthermore, detentions of a similar extended length as in the present case have been found elsewhere to violate the Due Process Clause. <u>See</u>, <u>e.g.</u>, <u>Tao J.</u>, 2019 WL 1923110, at *2 (D. Minn. Apr. 30, 2019) (14.5 months); <u>Sajous v. Decker</u>, 2018 WL 2357266, at *1 (S.D.N.Y. May 23,

---

[3] The Court notes that in <u>Ali v. Brott</u>, No. 19-1244, 2019 WL 1748712, at *2 (8th Cir. Apr. 16, 2019), the Eighth Circuit recently weighed in on the reasonableness of the length of detention for criminal aliens pursuant to § 1226(a). As noted by the Eighth Circuit, however, § 1226(a) gives aliens "<u>more protection</u> against prolonged detention than aliens detained under § 1226(c)." <u>Id.</u> (emphasis in original). There, unlike Petitioner in the present case, the alien had been given a bond hearing while awaiting his final removal order. Thus, <u>Ali v. Brott</u> is distinguishable from the present case.

[4] The Supreme Court described the "brief period" that it held valid: "in the majority of cases," detention pursuant to § 1226(c) in 2003 "lasts for less than . . . 90 days." <u>Demore</u>, 538 U.S. 510 at 529. In the overwhelming majority of cases—85%—"removal proceedings are completed in an average time of 47 days and a median of 30 days." <u>Id.</u> "In the remaining 15% of cases," in which an appeal in <u>Demore</u> was taken, "appeal takes an average of four months." <u>Id.</u> The Court thus concluded that "[i]n sum, the detention at stake under § 1226(c) lasts roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases." <u>Id.</u> at 530.

2018) (eight months); Gordon v. Shanahan, 2015 WL 1176706, *3 (S.D.N.Y. March 13, 2015) (eight months); Harpa v. Mumford, 211 F. Supp. 3d 706, 717 n.6 (D. Md. 2016) (10 months). Therefore, the current and ongoing 17 plus month length of Petitioner's detention without a bond hearing weighs heavily in favor of granting relief.

Second, courts consider how long the detention is likely to continue in the absence of judicial relief. In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals. Ly v. Hansen, 351 F.3d 263, 272 (6th Cir. 2003) ("The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness."). In Muse, for example, the IJ denied the petitioner's claim for relief and the petitioner promptly appealed the decision to the BIA. 2018 WL 4466052, at *6. The Court found that the petitioner could potentially be detained for up to another 18 months because at the time he filed his petition, he had just appealed the IJ's decision. Thus, the Court reasoned that if he received an adverse decision from the BIA then he would appeal the BIA's decision to the Eighth Circuit. Id. Therefore, the Court concluded that the potentially lengthy appeals process weighed in the petitioner's favor. Id.

In the present case, the future length of the ongoing detention also supports granting Petitioner relief. Like in Muse, Petitioner here could easily be detained for another year or more by the time all appeals have been exhausted. The IJ denied Petitioner's claims for relief on January 17, 2019, after Petitioner had already been civilly detained by DHS and ICE for over a year. (Minner Decl., Ex. H [Docket No. 8-8]). As of the date of the filing of Petitioner's reply on March 21, 2019, the BIA had yet to even issue a briefing schedule for Petitioner's appeal. (Pet.'s Reply, [Docket No. 15], at 3). If Petitioner loses his appeal, it is likely he will seek review in the Eighth Circuit, and it may well be another year before he gets a decision there. Muse, 2018 WL 4466052,

at *5 (D. Minn. Sept. 18, 2018). Thus, because it is likely that Petitioner will be detained for well more than another year by the time all appeals have been exhausted, this factor, too, weighs strongly in his favor.

Third, courts consider the conditions of the alien's detention. Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. Chavez-Alvarez v. Warden York County Prison, 783 F.3d 469, 477 (3d Cir. 2015). The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument. Id. And "[a]s the length of the detention grows, the weight given to this aspect of his detention increases." Id. Furthermore, courts in this District have found that this factor weighs in a petitioner's favor where the petitioner is being held in a county jail. Muse, 2018 WL 4466052, at *5.

This third factor also weighs in Petitioner's favor. Currently, Petitioner, who is only civilly committed, is being detained in the Kandihohi County Jail, a criminal detention facility, in Willmar, Minnesota. Like in Muse, supra, Petitioner here is similarly being detained in a county jail alongside inmates serving criminal sentences. Thus, because the current conditions of Petitioner's detention strongly resemble penal confinement, this factor also weighs in Petitioner's favor.

Fourth, courts consider the nature and extent of any delays in the removal proceedings caused by the alien. "An alien should not be punished for raising legitimate defenses to removal." Muse, 2018 WL 4466052 at *5; See, Ly, 351 F.3d at 272 ("An alien who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."). Indeed, "the mere fact that a noncitizen opposes his removal is insufficient to defeat a finding of unreasonably prolonged detention, especially where the Government fails to distinguish between bona fide and frivolous arguments in

opposition." Hernandez v. Decker, 2018 WL 3579108, at *9 (S.D.N.Y. July 25, 2018). Courts should, however, be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." Ly, 351 F.3d at 272. If courts did not take into account the alien's role in delaying removal proceedings, they "would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay 'unreasonable' and order their release." Id.

Here, in opposition to the present petition, the Government has failed to discuss any of Petitioner's arguments in the pending appeal from the IJ's order of removal, which overlooks a key part of a fact-dependent inquiry. See, e.g., Hernandez, 2018 WL 3579108, at *9 (noting that the "government's failure to parse [petitioner's] arguments overlooks a key part of a fact-dependent inquiry."); Chavez-Alvarez, 783 F.3d at 477 (noting that while the respondent "undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide . . . this does not undermine his ability to claim that his detention is unreasonable."); Gordon, 2015 WL 1176706, at *5 ("Moreover, it would be unreasonable to penalize [petitioner] for exercising his right to challenge removal by requiring him to be detained while he exercises that right . . . ."). Rather, the Government here only broadly argues that Petitioner's application for cancellation of removal, asylum, withholding of removal, and protection under CAT during the normal course of his immigration proceedings caused any delay in his removal. (Gov.'s Response, [Docket No. 10], at 18). As previously mentioned, however, "[a]n alien should not be punished for raising legitimate defenses to removal." Muse, 2018 WL 4466052 at *5.

Thus, the Government does not argue, and no evidence in the present record suggests, that Petitioner has engaged in any dilatory tactics with regard to his pending appeal to the BIA. Based on the record presently before the Court, Petitioner has merely raised non-frivolous arguments in support of his position on appeal. Additionally, based on the record presently before the Court, he has also complied with all deadlines, and he has not sought extensions during the course of his underlying immigration proceedings. Thus, this fourth factor too weighs in Petitioner's favor.

Fifth, courts consider the nature and extent of any delays in the removal proceedings caused by the Government. "Continued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." Sajous, 2018 WL 2357266, at *11.

Like Petitioner, there is nothing in the present record to suggest that the Government has engaged in any dilatory tactics. Similar to Petitioner, the Government has merely made non-frivolous arguments in support of its position and the Petitioner has not argued otherwise. (Indeed, the Government prevailed with the IJ). And like Petitioner, the Government has complied with all deadlines with the exception of a brief delay sought on August 16, 2018, for additional time to respond to Petitioner's Motion to Terminate the immigration proceedings. (See, Petition, [Docket No. 1], at 2). This fifth factor thus weighs in the Government's favor.

Lastly, courts consider the likelihood that the proceedings will culminate in a final removal order. While not singularly determinative, the more likely that the alien will ultimately be removed, the longer the detention that will be deemed reasonable. See, Muse, 2018 WL 4466052, at *6.

This sixth factor does not weigh strongly in either party's favor in the present case. The fact that the IJ has ordered that Petitioner be removed does not help Petitioner. However, Petitioner has appealed that decision to the BIA. (Pet.'s Reply [Docket No. 15]). Neither party has

11

characterized the arguments made on appeal, and thus, this Court does not have a sufficient basis to determine whether Petitioner is ultimately likely to be removed.

In conclusion, the weight of the present record (four of the aforementioned six factors) weigh heavily in Petitioner's favor. This Court therefore finds that continuing to detain Petitioner beyond the seventeen-plus months he has already been detained, without a bond hearing or any immediate end thereof evident, violates his due process rights under the Fifth Amendment.

Accordingly, this Court recommends that Petitioner's Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.

## III.    CONCLUSION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.   Haji S.'s Petition for Writ of Habeas Corpus, [Docket No. 1], be **GRANTED**.


Dated: May 21, 2019                                  s/Leo I. Brisobis_____
                                                     Leo I. Brisbois
                                                     U.S. MAGISTRATE JUDGE




**N O T I C E**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. See, Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).